**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Margo Hanks,<br><br>                    Plaintiff,<br><br>v.<br><br>American Family Mutual Insurance Company, a Wisconsin corporation; John Does 1-10; Jane Does 1-10; ABC Partnerships 1-10; XYZ Corporations 1-10,<br><br>                    Defendants. | No. CV-12-00880-PHX-DGC<br><br>**ORDER** |

Defendant American Family Mutual Insurance Company has filed a motion for partial summary judgment. Doc. 58. The motion is fully briefed. For the reasons that follow, the Court will grant in part and deny in part Defendant's motion.[1]

**I.   Background.**

Plaintiff owns property insured by Defendant and located at 16219 North 35th Avenue in Phoenix, Arizona. Doc. 70, ¶ 1. Plaintiff contends that her property was damaged in a severe wind and hail storm on October 5, 2010. *Id.*, ¶ 5. Defendant received notification of the damage on March 1, 2011, and sent a field adjuster to inspect the property on March 4, 2011. Doc. 59, ¶¶ 8-9. Defendant asserts that Plaintiff did not inform its adjuster of interior damage. *Id.*, ¶ 11. Plaintiff disputes this assertion.

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Doc. 70, ¶ 14. Defendant's adjuster provided a repair estimate of $3,019.63 which covered the replacement of 90 roof tiles. *Id.*, ¶ 15; Doc. 59, ¶ 13. Two days later, Defendant sent Plaintiff a check for $1,894.07, which represented the repair estimate less depreciation of $125.56 and a deductible of $1,000. Doc. 59, ¶ 13. Plaintiff deposited the check. *Id.* at 14. Plaintiff later obtained two additional repair estimates, one for $86,447.33 and one for $51,949.50. *Id.* at 21. Plaintiff did not notify Defendant of these estimates, but instead commenced this litigation on September 16, 2011 (*id.*, ¶ 20), asserting claims for breach of contract and breach of the duty of good faith and fair dealing (doc. 1-1 at 4-5). After receiving Plaintiff's additional estimates, Defendant retained an engineering firm to assess the damage to the property. Doc. 59, ¶ 22. The engineering firm's report noted several inconsistencies in both of Plaintiff's estimates. *Id.*, ¶ 23-24. The parties continue to dispute the extent of damage to the property and the amount of repairs covered.

**II.      Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.    Analysis.**

      **A.    Breach of Contract Claim.**

Defendant contends that it has not breached the insurance policy. Doc. 58 at 6. Plaintiff argues that Defendant has "failed to pay for all the damage to [her] home and [] ignored its own best practices." Doc. 69 at 7. Plaintiff, however, does not point to any specific policy provisions Defendant has breached. The policy language states that Defendant will pay within 30 days after receiving proof of loss and: (1) reaching an agreement, (2) the entry of a final judgment, or (3) the filing of an arbitration award. Doc. 59-1 at 12, ¶ 9. The policy provides that in the event of a disagreement as to the amount of liability "the controversy may be settled by arbitration." *Id.* at 11. The policy also states that Defendant may not be sued "unless there is a full compliance with all the terms of this policy." *Id.* at 13, ¶ 18. Additionally, the policy provides that if a settlement has been paid, an insured may "make a further claim . . . for any additional payment on a replacement cost basis provided" Defendant is notified within 180 days of the loss and repair or replacement is completed within one year of the loss. *Id.* at 12-13, ¶ 11(c).

When this action was initiated, Defendant had not been notified of a dispute as to the amount of damage. It was reasonable for Defendant to believe that Plaintiff's acceptance of the check issued on March 6, 2011 constituted an agreement. Plaintiff neither made a demand for arbitration nor a further claim as allowed by the policy. The best practices referenced by Plaintiff are not part of the policy, and whether Defendant complied with its own best practices is not relevant to whether Defendant breached its contract with Plaintiff. The Court concludes that Plaintiff has submitted no evidence that Defendant was in breach of the terms of the policy when this action was filed. The Court accordingly will grant Defendant's motion for summary judgment on this count.

      **B.    Breach of the Duty of Good Faith and Fair Dealing.**

To establish bad faith on the part of the insurer, a plaintiff must show (1) the absence of a reasonable basis for denying benefits of the policy, and (2) the defendant's

1 knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.
2 *Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1267-68 (Ariz. 1992) (quoting
3 *Noble v. Nat'l Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981)).  The first inquiry involves
4 an objective analysis that focuses on whether the insurer acted unreasonably.  The second
5 involves a subjective analysis as to "whether the insurer *knew* that its conduct was
6 unreasonable or acted with such reckless disregard that such knowledge could be imputed
7 to it."  *Id.* at 507 (emphasis in original).  If the plaintiff offers no significantly probative
8 evidence that calls into question the defendant's belief in the fairness of its actions, the
9 court may rule on the issue as matter of law.  *See Knoell v. Metro. Life Ins. Co.*,
10 163 F. Supp. 2d 1072, 1077 (D. Ariz. 2001) ("[B]ecause there are no questions of fact to
11 present to a jury about whether the insurance company really believed it should
12 investigate the claim . . . this Court concludes that the Defendant did not act in bad
13 faith[.]").

14 Plaintiff has presented evidence that, when viewed in the light most favorable to
15 the Plaintiff, could lead a jury to conclude that Defendant acted in a consciously
16 unreasonable manner while processing her claim.  There is evidence that Defendant's
17 adjuster completed an inspection of hail damage to Plaintiff's home without directly
18 inspecting the roof, without inspecting her HVAC unit, and without inspecting the
19 interior of her home despite being told of interior damage by Plaintiff.  *See* Doc. 70-2 at
20 6; Doc. 70-1 at 3, ¶ 8.  Plaintiff's experts identified significant damage to Plaintiff's
21 home that was not identified by Defendant's adjuster.  *See* Doc. 70-4 at 6-7; Doc. 70-7.
22 Additionally, although Defendant argues that there is no evidence that the adjuster was
23 familiar with Defendant's adjuster training materials, those materials, which discuss
24 putting pressure on a customer to accept a settlement, could be viewed by a jury as
25 evidence of unreasonable business practices.  *See* Doc. 70-10, 70-11, 70-12.[2]  Further, the
26 Court previously held that the enforceability of Endorsement 548(c) implicates several

---

[2] Defendant objects to the admissibility of these materials on the ground of relevance.  Doc. 75 at 4.  The Court disagrees.  These materials appear to satisfy the Rule 401 relevancy standard on the reasonableness of Defendant's actions.

- 4 -

genuine issues of material fact.  *See* Doc. 53 at 4.  Whether it was reasonable for Defendant to rely on the endorsement therefore also presents a genuine issue of material fact.

A question of fact also exists as to whether it was unreasonable for Defendant not to include general contractor overhead and profit in its actual cash value payment.  Actual cash value is defined in the policy as "[t]he amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence."  Doc. 59-1 at 12.  This Court previously denied summary judgment for an insurer on the issue of whether general contractor overhead and profit was included in the meaning of actual cash value.  *See Bond v. Am. Family Mut. Ins. Co.*, CV-06-1249-PHX-DGC, 2008 WL 4778873 at *3 (D. Ariz. Feb. 19, 2008).  The policy language at issue here is nearly identical to the policy considered in *Bond*.  *Id.*  Plaintiff's policy does not exclude contractor overhead and profit from "the universe of expenses that may constitute part of the actual cash value."  *Id.*  A jury could find that it was unreasonable for Defendant not to include contractor overhead and profit in its settlement.

Defendant argues that the differing estimates submitted by Plaintiff are evidence that Plaintiff's claim was fairly debatable.  Doc. 58 at 9.  The fairly debatablity of a claim, however, does not free an insurer from liability for bad faith.  *See Young v. Allstate Ins. Co.*, 296 F. Supp. 2d 1111, 1116 (D. Ariz. 2003) ("[W]hile fair debatability is a necessary condition to avoid a claim of bad faith, it is not always a sufficient condition.") (internal citations and quotation marks omitted).  The Court must still consider "whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably[.]"  *Id.*  Such evidence exists here.  The Court will therefore deny Defendant's motion for summary judgment on Plaintiff's bad faith claim.

### C. Punitive Damages.

Punitive damages are recoverable in a bad faith case where "the facts establish that

defendant's conduct was aggravated, outrageous, malicious, or fraudulent." *Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz. 1986). "The key is the wrongdoer's intent to injure the plaintiff or his deliberate interference with the rights of others, consciously disregarding the unjustifiably substantial risk of significant harm to them." *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 680 (Ariz. 1986) (citing *Rawlings*, 726 P.2d at 576). A motion for summary judgment on the issue of punitive damages "must be denied if a reasonable jury could find the requisite evil mind by clear and convincing evidence." *Thompson v. Better-Bilt Aluminum Prod. Co.*, 832 P.2d 203, 211 (Ariz. 1992). The Court finds that the evidence presented could lead a reasonable jury to conclude that Defendant's significantly abbreviated inspection consciously disregarded a substantial risk of harm to Plaintiff. The Court will deny Defendant's motion for summary judgment on the issue of punitive damages.

### D. Motion to Supplement.

Plaintiff has filed a motion to supplement her response to Defendant's motion with affidavits from her experts. Doc. 77. The affidavits do not expand the opinions offered by the experts; they merely seek to show the ultimate admissibility of those opinions. Defendant objects. Doc. 81. The Court will grant Plaintiff's motion. Rule 56(e)(1) allows the Court to give a party "an opportunity to properly support or address [a] fact."

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Doc. 58) is **granted in part and denied in part**.

2. Plaintiff's motion to supplement (Doc. 77) is **granted**.

3. The Court will set a final pretrial conference by separate order.

Dated this 18th day of November, 2013.

David G. Campbell
United States District Judge